IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISON

| | |
|---|---|
| WILLIAM MERCADO, | ) CASE NO. 1:20-CV-02253-BYP |
| Plaintiff, | ) JUDGE BENITA Y. PEARSON<br>) UNITED STATES DISTRICT JUDGE |
| v. | ) |
| COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) MAGISTRATE JUDGE<br>) CARMEN E. HENDERSON |
| Defendant, | ) **REPORT AND RECOMMENDATION** |

**I.     Introduction**

Plaintiff, William Mercado ("Claimant"), seeks judicial review of the final decision of the Commissioner of Social Security denying his application for Disability Insurance Benefits ("DIB"). This matter is before me pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and Local Rule 72.2(b). For the reasons set forth below, it is RECOMMENDED that the Court OVERRULE Claimant's Statement of Errors and AFFIRM the Commissioner's decision.

**II.    Procedural History**

Claimant originally filed applications for DIB and Social Security Income on May 19, 2017, alleging a disability onset date of April 24, 2017. (ECF No. 11, PageID #: 150). The applications were denied initially and upon reconsideration, and Claimant requested a hearing before an administrative law judge ("ALJ"). (ECF No. 11, PageID #: 150). On August 29, 2018, an ALJ held a hearing. (ECF No. 11, PageID #: 150). On September 7, 2018, the ALJ issued a written decision finding Claimant was not disabled. (ECF No. 11, PageID #: 150). The ALJ's

1

decision became final on November 16, 2018, when the Appeals Council declined further review. (ECF No. 11, PageID #: 166).

On December 3, 2018, Claimant filed a new application for DIB only, eventually alleging a disability onset date of September 28, 2018. (ECF No. 11, PageID #: 89, 285). The application was denied initially and upon reconsideration, and Claimant requested a hearing before an administrative law judge ("ALJ"). (ECF No. 11, PageID #: 221). On December 17, 2019, an ALJ held a hearing, during which Claimant, represented by counsel, and an impartial vocational expert testified. (ECF No. 11, PageID #: 110). On February 3, 2020, the ALJ issued a written decision finding Claimant was not disabled. (ECF No. 11, PageID #: 82). The ALJ's decision became final on August 25, 2020, when the Appeals Council declined further review. (ECF No. 11, PageID #: 65).

On October 6, 2020, Claimant filed his Complaint to challenge the Commissioner's final decision. (ECF No. 1). The parties have completed briefing in this case. (ECF Nos. 13, 15). Claimant asserts the following assignments of error:

> (1) The ALJ erred in finding that the Claimant's sleep apnea did not constitute a severe impairment
>
> (2) The ALJ erred in evaluating the persuasiveness of opinions from the Claimant's treating physicians

(ECF No. 13 at 1).

### III. Background

#### A. Relevant Hearing Testimony

The ALJ summarized the relevant testimony from Claimant's hearing:

> The claimant testified that he has headaches every day. He said that he takes approximately 20 pills a day, but also rests. He says that his headaches cause a sensation of pressure in his head. He said that he is sometimes also dizzy and has difficulty walking.

> The claimant said that he also uses a "breathing machine." The claimant said that he lives with his wife, daughter, and grandson. He said that he does no chores, and does not engage in any hobbies, although he is able to bathe and dress himself.

(ECF No. 11, PageID #: 98).

### B. Relevant Medical Evidence

In April 2017, Claimant went to the emergency room after experiencing dizziness and a headache. (ECF No. 11, PageID #: 464, 459). Doctors discovered a tumor in Claimant's pituitary gland and high prolactin levels. (ECF No. 11, PageID #: 457–58). Since its discovery, Claimant has reported ongoing headaches and was referred to a headache clinic. (ECF No. 11, PageID #: 449). Doctors prescribed medication that significantly reduced both Claimant's prolactin levels and the size of the tumor but did not stop the headaches. (ECF No. 11, PageID #: 448). However, by March 2018, Claimant reported that his headaches were "mild." (ECF No. 11, PageID #: 431).

In May 2018, Claimant began seeing Zubair Ahmed, M.D. at the Cleveland Clinic's Division of Headache. (ECF No. 11, PageID #: 414). Dr. Ahmed prescribed Claimant Topamax to help with his headaches. (ECF No. 11, PageID #: 418). Claimant reported poor appetite and poor sleep, getting 3–4 hours of sleep per day. (ECF No. 11, PageID #: 414). In September 2018, Claimant returned to his endocrinologist and reported difficulty falling asleep and "mild" headaches. (ECF No. 11, PageID #: 402). The endocrinologist informed Claimant that his tumor had shrunk and no longer caused any compression. (ECF No. 11, PageID #: 405). Claimant's prolactin levels were normal. (ECF No. 11, PageID #: 405).

In February 2019, Claimant returned to Dr. Ahmed. (ECF No. 11, PageID #: 878). Claimant reported getting 3–4 hours of sleep per day and no improvement in his headaches. (ECF No. 11, PageID #: 878). Dr. Ahmed prescribed Plaintiff a new headache medication,

Inderal, and sent Claimant for a sleep study. (ECF No. 11, PageID #: 879). Claimant consulted with a sleep specialist. (ECF No. 11, PageID #: 874). Claimant stated that he experienced snoring, being woken up by choking or gasping for air, and moving around frequently in his sleep. (ECF No. 11, PageID #: 875). Dr. Zaid diagnosed sleep-disordered breathing and chronic insomnia. (ECF No. 11, PageID #: 877). The sleep study confirmed "severe obstructive sleep apnea" and Claimant was prescribed a CPAP machine and melatonin. (ECF No. 11, PageID #: 875).

In April 2019, Claimant reported "mild" headaches and difficulty falling sleep. (ECF No. 11, PageID #: 1079). In May 2019, Claimant again reported poor sleep and ongoing daily headaches. (ECF No. 11, PageID #: 1007). Dr. Ahmed noted that Claimant was doing well on Inderal. (ECF No. 11, PageID #: 1007). Dr. Ahmed prescribed Imitrex and infusions, as necessary, for the onset of severe headaches. (ECF No. 11, PageID #: 1010).

C. **Opinion Evidence at Issue**

1. **Treating Neurologist — Zubair Ahmed, M.D.**

On October 31, 2018, Dr. Ahmed authored a letter that stated:

> To Whom It May Concern:
>
> William Mercado is a patient in the Department of Neurology at Cleveland Clinic. He has a history of a pituitary tumor and secondarily new daily persistent headache. This is an unusual, but chronic condition for which neither the pathophysiological etiology nor an effective treatment/cure have been identified. As such he has significant disability from this condition which may preclude him from working. Please do not hesitate to contact me should you have any further questions or concerns.

(ECF No. 11, PageID #: 378). Dr. Jayantilal Bhimani signed onto this letter as well. (ECF No. 11, PageID #: 380). The ALJ rejected their opinion, reasoning:

> The shared statement of Dr. Ahmed and Dr. Bhimani is neither

4

> valuable nor persuasive, as an opinion regarding the ability of an individual to work, or a finding of disability, is reserved to the Commissioner. (20 CFR 404.1520b(c)). This statement does not provide any specific functional limitations arising from the claimant's headaches, and therefore is not persuasive.

(ECF No. 11, PageID #: 101).

In December 2019, Dr. Ahmed authored a second letter:

> To Whom It May Concern:
>
> William Mercado, a 44 year old male with a history of prolactinoma, treated by the Cleveland Clinic, who had improved prolactin level who presents with new daily persistent headache (NDPH) since diagnosis of pituitary tumor. This is a disabling headache disorder more commonly seen in patients with underlying central nervous system pathology. This [] has been demonstrated extensively in the research as all patients presenting with NDPH undergo an[] extensive secondary headache evaluation. In addition he exhibited some elements of central sensitization on exam often seen with chronic daily headache. His diagnosis remains: Secondary headache attributed to prolactinoma.
>
> HIS diagnosis based on current history and exam:
> Secondary Headache associated with pituitary adenoma
> Continue yearly follow up with Neuro-ophthalmology
> Period limb movements in sleep – may need to see sleep medicine in the future

(ECF No. 11, PageID #: 1162). The ALJ found the letter "not persuasive," explaining:

> [Dr. Ahmed] describes the claimant as having a primary diagnosis of secondary headache attributed to prolactinoma. However, he does not provide an opinion regarding how this would affect the claimant's functioning, aside from noting that upon examination, the claimant "exhibited some elements of central sensitization…often seen with chronic daily headache." (Ex. B17F/1). This statement from Dr. Ahmed is not persuasive, as does not describe specific functional limitations arising from the claimant's diagnosis. Such statements from treating physicians are neither valuable nor persuasive. (20 CFR 404.1520b(c)).

(ECF No. 11, PageID #: 101).

  **2.**   **Treating Primary Care Physician — Jayantilal Bhimani, M.D.**

5

On April 5, 2019, Claimant's primary care physician, Dr. Bhimani, completed an assessment of Claimant's residual physical capacity. (ECF No. 11, PageID #: 999–1000). Dr. Bhimani opined that Claimant was limited to lifting less than five pounds and walking and standing less than two hours in a workday. (ECF No. 11, PageID #: 999). He indicated that Claimant could rarely climb, balance, stoop, crouch, kneel, or crawl. (ECF No. 11, PageID #: 999). He also suggested that Claimant could only occasionally push, pull, reach, or perform fine and gross manipulation. (ECF No. 11, PageID #: 1000). He supported his assessment with his medical findings of dizziness, headaches, and blurred vision. (ECF No. 11, PageID #: 999–1000). He also opined that Claimant experiences moderate pain that would interfere with his concentration, take him off task, and cause absenteeism, and said that he would require additional unscheduled rest periods during an eight-hour workday. (ECF No. 11, PageID #: 1000).

The ALJ concluded that Dr. Bhimani's opinion was "unpersuasive." He reasoned:

> Dr. Bhimani's opinion is specific with regard to functional limitations, but unsupported in the record and inconsistent with the consistent normal neurological findings and physical examination findings of full strength and no limitations in range of motion. None of the clinical records contain findings of consistent dizziness arising from the claimant's headaches, and do not document headache severity, intensity, and the time it takes for the headaches to resolve with use of medication. (Ex. B6 F/10; B11F/21, 24; B17F/3).

(ECF No. 11, PageID #: 101).

### 3. State Agency Medical Consultants

Two state agency medical consultants reviewed Claimant's evidence and gave their opinions. The ALJ summarized their findings:

> At the initial level of the claim, on February 13, 2019, state agency medical consultant, Abraham Mikalov, M.D. adopted the findings

6

>> in the prior Administrative Law Judge decision, under the provisions of AR 98-4, which was promulgated following the Drummond decision. This physical RFC limited the claimant to no climbing of ladders, ropes, or scaffolds, and avoidance of all exposure to unprotected heights or dangerous machinery. (Ex. B3A/8-910). At the reconsideration level of the claim, on March 18, 2019, medical consultant Indira Jasti, M.D. also adopted the residual functional capacity finding from the prior claim.

(ECF No. 11, PageID #: 102–03). The ALJ found the opinion persuasive, reasoning that "the available medical records that document the claimant's treatment do not support the claimant's allegations and reflect no greater limitations than those found by the Administrative Law Judge in the prior claim." (ECF No. 11, PageID #: 103).

IV. **The ALJ's Decision**

The ALJ made the following findings relevant to this appeal:

> 3. The claimant has the following severe impairments: benign brain tumor (history of a pituitary tumor), headaches/secondary headaches attributed to prolactinoma, prolactinoma, major depressive disorder, and generalized anxiety disorder. (20 CFR 404.1520(c)).

> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: he can never climb ladders, ropes, or scaffolds; must avoid all exposure to hazards (i.e., never be exposed to unprotected heights or dangerous machinery); can perform simple, routine tasks (unskilled work), but not at a production rate pace; is limited to occasional interaction with the public; and limited to occasional routine workplace changes.

(ECF No. 11, PageID #: 91, 97).

V. **Law & Analysis**

   A. **Standard of Review**

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v.*

7

*Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

**B.        Standard for Disability**

The Social Security regulations outline a five-step process that the ALJ must use in determining whether a claimant is entitled to supplemental-security income or disability-insurance benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of her residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient

evidence to prove that she is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). Specifically, the claimant has the burden of proof in steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.*

### C. Discussion

Claimant raises two issues on appeal. First, Claimant argues that the ALJ erred in determining that Claimant's sleep apnea did not constitute a severe impairment. Second, Claimant asserts that the ALJ erred in determining the persuasiveness of Dr. Ahmed's and Dr. Bhimani's opinions.

#### 1. Sleep Apnea as a Severe Impairment

Claimant contends that the ALJ erred in determining that Claimant's sleep apnea was not a severe impairment. Claimant alleges that the ALJ "ignored a host of evidence" showing how Claimant's "quite severe sleep apnea placed significant limitations on his functioning." (ECF No. 13 at 10). Commissioner responds that, as long as an ALJ finds one impairment to be severe, there is no reversible error. Moreover, Commissioner asserts that Claimant failed to prove the severity of his sleep apnea, failing to meet his burden.

The Commissioner is correct. During Step Two, the ALJ must consider whether the claimant has any severe impairments. 20 C.F.R. § 404.1545(e). "[O]nce the ALJ determines that a claimant has at least one severe impairment, the ALJ must consider all impairments, severe and non-severe, in the remaining steps." *Pompa v. Comm'r of Soc. Sec.*, 73 F. App'x 801, 803 (6th Cir. 2003) (citing 20 C.F.R. § 404.1545(e)). "The fact that some of [claimant's] impairments were not deemed to be severe at step two is therefore legally irrelevant." *Anthony v. Astrue*, 266

F. App'x 451, 457 (6th Cir. 2008) (citations omitted). Here, the ALJ found that Claimant had the severe impairments of benign brain tumor, headaches/secondary headaches attributed to prolactinoma, prolactinoma, major depressive disorder, and generalized anxiety disorder. She considered whether Claimant's sleep apnea was a severe limitation but concluded that there was insufficient evidence that it caused significant limitations on Claimant's functioning. (ECF No. 11, PageID #: 92). Then, when discussing the RFC, the ALJ noted that Claimant reported "getting little sleep at night," was diagnosed with obstructive sleep apnea, and was proscribed use of a CPAP. (ECF No. 11 PageID #: 99). The ALJ ultimately determined, however, that all the available treatment records contained findings of full strength and no limitations in range of motion. Accordingly, because the ALJ found Claimant had at least one severe impairment at Step Two and considered Claimant's sleep apnea in her RFC assessment, the fact that she did not find Claimant's sleep apnea to be a severe impairment is not reversible error—if it is even an error at all. *See Pompa*, 73 F. App'x at 803. Claimant's first assignment of error is therefore without merit.

2. **Weight of medical opinions**[1]

In his second assignment of error, Claimant asserts that the ALJ erred in evaluating the persuasiveness of Dr. Ahmed's and Dr. Bhimani's opinions. He argues that the ALJ's reasoning for discrediting their opinions was vague and did not provide a logical bridge for the Court to understand her conclusions. At Step Four, the ALJ must determine a claimant's RFC by considering all relevant medical and other evidence. 20 C.F.R. § 404.1520(e). On January 18, 2017, the Social Security Administration amended the rules for evaluating medical opinions for

---

[1] The "treating source rule," which generally required the ALJ to defer to the opinions of treating physicians, was abrogated by 20 C.F.R. § 404.1520c for claims filed on or after March 27, 2017, such as here.

claims filed after March 27, 2017. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844 (Jan. 18, 2017). The new regulations provide that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." C.F.R. § 404.1520c(a). Nevertheless, an ALJ must "articulate how [she] considered the medical opinions and prior administrative medical findings" in adjudicating a claim. 20 C.F.R. § 404.1520c(a). In doing so, the ALJ is required to explain how she considered the supportability and consistency of a source's medical opinion(s), but generally is not required to discuss other factors. 20 C.F.R. § 404.1520c(b)(2). Medical source opinions are evaluated using the factors listed in 20 C.F.R. § 404.1520c(c). The factors include: supportability; consistency; the source's relationship with the claimant; the source's specialized area of practice, if any; and "other factors that tend to support or contradict a medical opinion." 20 C.F.R. §§ 404.1520c(c), 404.1520c(b)(2) ("The factors of supportability [] and consistency [] are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions . . . .").

      a.     **Dr. Zubair Ahmed's Opinions**

Dr. Ahmed authored two letters in support of Claimant's disability claim. In his first letter, Dr. Ahmed stated:

> William Mercado is a patient in the Department of Neurology at Cleveland Clinic. He has a history of a pituitary tumor and secondarily new daily persistent headache. This is an unusual, but chronic condition for which neither the pathophysiological etiology nor an effective treatment/cure have been identified. As such he has significant disability from this condition which may preclude him from working. Please do not hesitate to contact me should you have any further questions or concerns.

(ECF No. 11, PageID #: 378). Dr. Bhimani signed onto this letter as well. (ECF No.

11, PageID #: 380). The ALJ rejected this opinion as invaluable and not persuasive, reasoning that an opinion regarding the ability of an individual to work is reserved to the Commissioner. (ECF No. 11, PageID #: 101).

In his second letter, Dr. Ahmed stated:

> William Mercado, a 44 year old male with a history of prolactinoma, treated by the Cleveland Clinic, who had improved prolactin level[s] who presents with new daily persistent headache (NDPH) since diagnosis of pituitary tumor. This is a disabling headache disorder more commonly seen in patients with underlying central nervous system pathology. This [] has been demonstrated extensively in the research as all patients presenting with NDPH undergo an[] extensive secondary headache evaluation. In addition he exhibited some elements of central sensitization on exam often seen with chronic daily headache. His diagnosis remains: Secondary headache attributed to prolactinoma.
>
> HIS diagnosis based on current history and exam:
> Secondary Headache associated with pituitary adenoma
> Continue yearly follow up with Neuro-ophthalmology
> Period limb movements in sleep – may need to see sleep medicine
> in the future

(ECF No. 11, PageID #: 1162). The ALJ did not find this letter persuasive because Dr. Ahmed did not "provide an opinion regarding how this would affect the claimant's functioning, aside from noting that upon examination, the claimant 'exhibited some elements of central sensitization…often seen with chronic daily headache.'" (ECF No. 11, PageID #: 101). She noted that the Dr. Ahmed did not describe any specific functional limitations arising from Claimant's diagnosis.

Claimant argues that the ALJ did not provide a logical bridge for his conclusion and only "loosely offer[ed] some reasons as to why she found these medical opinions unpersuasive." (ECF No. 13 at 13). He suggests that the ALJ erred in discounting the opinions because of a lack of specific functional limitations because Claimant's disability does not allow for his doctors to

12

provide detailed accountings of the exact functional limitations caused by his condition. "That is, [Claimant's] brain tumor and headaches do not cause any specific limitations with respect to any particular physical activity such as lifting, standing, or walking. Rather, it causes intense episodic but chronic headaches during which [Claimant] is usually bed ridden." (ECF No. 13 at 14).  He further asserts that an opinion from a doctor saying their patient is disabled does not void all findings from that doctor. The Commissioner responds that opinions regarding the ability to work are reserved to the Commissioner and the opinions did not provide any actual functional limitations for the ALJ to consider.

As noted previously, when an ALJ receives medical opinions, she is required to articulate how persuasive she finds them. 20 C.F.R. § 404.1520c(a). A medical opinion is "a statement from a medical source about what [a claimant] can still do despite [his] impairment(s) and whether [he has] one or more impairment-related limitations" in his ability to perform physical and mental demands of work activities and his ability to adapt to environmental conditions. 20 C.F.R. § 404.1513(a)(2). Judgments about the nature and severity of a claimant's impairments, medical history, diagnoses, treatment prescribed with response, and prognoses are all considered "other medical evidence" and not medical opinions. 20 C.F.R. § 404.1513. The ALJ is not required to explain how she considered medical evidence. 20 C.F.R. § 404.1520c (stating only that the ALJ is required to articulate how she considered medical opinions and prior administrative findings). Dr. Ahmed's letters provided only medical history, diagnoses, and that Claimant may be unable to work. None of this can be considered a "medical opinion." There was no statement about what Claimant could or could not do or whether he had any impairment-related limitations. As such, the ALJ was not required to explain how she considered the letters. The Court, therefore, finds that the ALJ did not err in finding Dr. Ahmed's letters not persuasive.

    b.  **Jayantilal Bhimani's Opinion**

  Dr. Bhimani provided an assessment of Claimant's residual physical capacity. Dr. Bhimani opined that Claimant was limited to lifting less than five pounds and walking and standing less than two hours in a workday. (ECF No. 11, PageID #: 999). He indicated that Claimant could rarely climb, balance, stoop, crouch, kneel, and crawl. (ECF No. 11, PageID #: 999). He supported his assessment with his medical findings of dizziness, headaches, and blurred vision. (ECF No. 11, PageID #: 999–1000). He also opined Claimant's moderate pain would interfere with his concentration, cause absenteeism, and would require additional unscheduled rest periods during an eight-hour workday. (ECF No. 11, PageID #: 1000). The ALJ found the opinion "unpersuasive" because it was "unsupported by the record and inconsistent with the consistent normal neurological findings and the physical examination findings of full strength and no limitations in range of motion." (ECF No. 11, PageID #: 101). She noted that none of the clinical records showed consistent dizziness resulting from headaches and did not document headache severity or intensity. (ECF No. 11, PageID #: 101). She also observed that none of the findings indicated how long it would take for the headaches to resolve with medication. (ECF No. 11, PageID #: 101).

  Claimant argues that "none of [the ALJ's] stated reasons present a logical bridge to the conclusion that the opinions are inconsistent or unsupported." (ECF No. 13 at 13). The Claimant first seems to suggest that the ALJ should not have relied on the medical findings because the Claimant's "inability to work is the result of intense headaches, which cannot be measured by medical testing." (ECF No. 13 at 13). As such, Claimant alleges that "it is unsurprising that his physical examinations are 'normal' when not in the midst of a headache episode." (ECF No. 13 at 13). The Court, however, cannot reweigh the evidence as Claimant appears to request. *See Big*

14

*Ranch Res., Inc. v. Ogle*, 737 F.3d 1063, 1074 (6th Cir. 2013). The Court is limited to considering whether the proper standards were applied and whether substantial evidence supports the ALJ's decision. The ALJ clearly articulated why he found Dr. Bhimani's opinion unpersuasive, and the medical evidence supports his decision. The medical evidence demonstrates that Claimant considered his headaches to be chronic but "mild" and the neurological findings were consistently normal. The physical examinations demonstrated a full range of motion and, therefore, do not support Dr. Bhimani's opinion that Claimant cannot lift more than five pounds or walk or stand less than two hours in a workday. There is no evidence indicating Claimant's headaches were severe or that they lasted for long periods after taking medication. *See Pasco v. Comm'r of Soc. Sec.*, 137 F. App'x 828, 836 (6th Cir. 2005) (concluding the ALJ did not err in finding that the claimant's headaches were not disabling where there was no objective evidence suggesting the headaches were so severe that they would keep her from working). Thus, the ALJ properly relied upon the medical findings—or lack thereof—in determining that Dr. Bhimani's opinion lacked supportability.

The Claimant next asserts that Dr. Bhimani's opinion was fully consistent with Dr. Ahmed's opinions and the rest of the treatment records. He alleges that "[t]he simple existence of four consistent medical reports themselves, given the frequent difficulty of getting a medical report, should highlight consistency rather than be ignored by the ALJ."[2] (ECF No. 13 at 13). Claimant suggests that, together, the medical opinions and Claimant's testimony, "support a conclusion that [Claimant's] brain tumor causes intense, chronic, and treatment-resistant headaches that impair his ability to consistently perform activities of daily living." (ECF No. 13

---

[2] Claimant repeatedly states that there are four medical opinions from doctor Bhimani and Dr. Ahmed. It appears she considers Dr. Ahmed's original letter one opinion and Dr. Bhimani's endorsement of that letter a second opinion.

at 15). The Court first notes that, as discussed previously, Dr. Ahmed's letters are not considered "medical opinions" as they do not opine on Claimant's functional abilities. They are consistent only in that they both state that Claimant suffers from chronic headaches, which the ALJ acknowledged. Dr. Ahmed did not opine on any of Claimant's functional limitations. As such, there is no other medical opinion stating that Claimant was unable to lift more than five pounds or walk or stand less than two hours a day.

Additionally, substantial evidence supports the ALJ's conclusion that Dr. Bhimani's opinion was inconsistent with the medical record. "[A] claimant does not establish a lack of substantial evidence by pointing to evidence of record that supports [his] position. Rather, [Claimant] must demonstrate that there is not sufficient evidence in the record that would allow a reasoning mind to accept the ALJ's conclusion." *Greene v. Astrue*, No. 1:10-cv-0414, 2010 WL 5021033, at *4 (N.D. Ohio Dec. 3, 2010). Dr. Bhimani's opinion was inconsistent with the State agency opinions and the objective medical findings. There is no evidence in the record of physical functional limitations or abnormal neurological findings. The neurological findings indicated that Claimant's tumor shrunk and no longer caused any compression. (ECF No. 11, PageID #: 405). The physical examinations demonstrated full strength and range of motion and Claimant repeatedly reported his headaches to be "mild." (ECF No. 11, PageID #: 431, 1079). These findings are inconsistent with limiting Claimant to lifting less than five pounds and walking and standing less than two hours in a workday as Dr. Bhimani opined. Thus, the ALJ's conclusion that Dr. Bhimani's opinion was inconsistent with the medical evidence was clearly articulated and supported by substantial evidence.

Finally, Claimant argues that the length of the treatment relationship, the frequency of examination, and the nature and extent of the treatment relationship all indicate that the ALJ

should have assigned Dr. Bhimani's medical opinions greater evidentiary weight. While it may be true that these factors weigh in favor of greater evidentiary support, as discussed above, the two most important factors—supportability and consistency—support the ALJ's decision. The Court, therefore, finds no reason to disturb the ALJ's findings. *See Harris v. Comm'r of Soc. Sec.*, 2:20-cv-4356, 2021 WL 3615721, at *8 (S.D. Ohio Aug. 16, 2021) (affirming the ALJ's decision where "the ALJ's discussion of the supportability and consistency factors satisfied the articulation requirements of §§ 404.1520c and 416.920c" and "the ALJ's supportability and consistency analysis was supported by substantial evidence").

**VI. Recommendation**

Based on the foregoing, it is RECOMMENDED that the Court OVERRULE Claimant's Statement of Errors and AFFIRM the Commissioner's decision.

Dated: November 4, 2021

s/ *Carmen E. Henderson*
CARMEN E. HENDERSON
U.S. MAGISTRATE JUDGE

**OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F. 3d 520, 530–31 (6th Cir. 2019).